Zimmerman, J.
At the outset., we note the established rule that in the face of a motion to direct the jury to return a verdict for one of the parties to an action, which in effect is a demurrer to the evidence, the court must construe the evidence most strongly in favor of the party against whom the motion is made, and, where there is substantial competent evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court’s determination in disposing of such a motion. Wilkeson, Admr., v. Erskine & Son, Inc., 145 Ohio St., 218, 61 N. E. (2d), 201; Hilleary v. Bromley, 146 Ohio St., 212, 221, 64 N. E. (2d), 832, 837; Purdy, Admr., v. Kerentoff, 152 Ohio St., 391, 89 N. E. (2d), 565.
Based largely on pronouncements contained in the English case of Winterbottom v. Wright (1842), 10 Mess. & Wels., 109, 152 Eng. Rep., 402, a general rule of wide acceptance in this country for many years was that a contractor, manufacturer or vendor is not liable to third persons, who have no contractual relations with him, for negligence in the construction, manufacture or sale of the articles which he produces and distributes.
At least two exceptions to this general rule were recognized, i. e., (1) one who negligently produces an article or substance which is imminently dangerous to the life or health of mankind and which is intended to preseiwe, destroy or affect human life is amenable to an action by persons who suffer from such negligence and (2) one who sells or delivers an article, which he knows to be imminently dangerous to life or limb, without notice of its harmful qualities, is liable to' any person who suffers a reasonably to be anticipated injury therefrom, whether there was any contractual relations between the parties or not. See annotation, 156 A. L. R., 481.
As judicial thought became more liberal, exceptions to the general rule were enlarged, and in 1916 the Court of Appeals of New York decided the notable case of MacPherson v. Buick, Motor Co., 217 N. Y., 382, 111 N. E., 1050, L. R. A. 1916 F, 696, Ann. Cas. 1916 C, 440, in which it was held that an article need not be inherently or imminently dangerous to constitute an exception to the general rule; it is enough if it is such as to make *37 it reasonably certain that life and limb will be endangered by its negligent preparation or construction, and, where a manufacturer places a defective wheel on a motor vehicle, the ordinary and customary use of which may entail an undue or unreasonable risk of harm, a remote user who purchases the motor vehicle from a dealer and is injured because of the wheel’s defective condition may successfully maintain an action based on negligence directly against the manufacturer, irrespective of any privity of contract between them. See Thrash, a Minor, v. U-Drive-It Co., 158 Ohio St., 465, 110 N. E. (2d), 419.
The advanced position taken in the MacPherson case is in line with a rule that has found favor with a number of courts, which is that, where one, for a consideration, undertakes to provide an inspection or examination service for the mechanical equipment owned or controlled by another, the former is thereby charged with the duty of performing those services in a reasonably proper and efficient manner, and, if such duty is negligently or carelessly performed whereby injury occurs to a blameless person lawfully using such equipment, such injured person has a right of action directly against the offending contractor. Liability in such instance is not dependent upon any contractual relation between the person injured and the contractor but on the failure of the contractor to exercise due care in the performance of his obligation. Compare Van Winkle v. American Steam Boiler Co., 52 N. J. Laws, 240, 247, 19 A., 472, 475. See 2 Restatement of the Law of Torts, 843, Section 311, Illustration 1.
A representative case in which the above principle was applied with respect to an elevator is that of Dahms v. General Elevator Co., 214 Cal., 733, 7 P. (2d), 1013. There an elevator operator sued to recover for personal injuries sustained when the elevator on which he was riding fell. Plaintiff was an employee of the owner of the elevator who had contracted with the defendant for the latter to keep the elevator in running order and to make periodic inspections thereof. The Supreme Court of California held that the evidence produced on the trial was sufficient to sustain the verdict against defendant, grounded on its negligence in making repairs or in negligently failing to discover a defect in the safety device on the elevator which did *38 not function when the elevator started to fall. As in the instant case, defendant contended that it owed no duty of care to plaintiff, because there was no contractual relation between them. Near the close of the per curiam opinion in the California ease, it was remarked:
“We are of the opinion that the jury could properly find that the accident was proximately caused by reason of the fact that the defendant * * * negligently failed to discover that the hoisting shaft was defective, and that the elevator continued to fall by reason of defendant’s negligence * * * in negligently failing to properly inspect the same. Defendant * * * is * * * chargeable with knowledge that if an accident should occur and the safety device did not work the car would be precipitated to the basement and the operator injured. In such a case we think that defendant was under a duty to plaintiff to use ordinary and reasonable care in the repair and inspection of the elevator, and where as here the jury finds that defendant negligently performed its duties, and such negligence proximately contributed to the injury, the liability of defendant to plaintiff is clear.”
Although the plaintiffs were not successful in all of them, other cases recognizing the validity and force of the principle adopted in the California case are Westinghouse Electric Elevator Co. v. Hatcher (C. C. A. 5), 133 F. (2d), 109; Blackhawk Hotels Co. v. Bonfoey (C. C. A. 8), 227 F. (2d), 232; Wolfmeyer v. Otis Elevator Co. (Mo.), 262 S. W. (2d), 18; Bollin v. Elevator Construction & Repair Co., Inc., 361 Pa., 7, 63 A. (2d), 19, 6 A. L. R. (2d), 277; Sheridan v. Aetna Casualty & Surety Co., 3 Wash. (2d), 423, 100 P. (2d), 1024. Compare the recent cases of Witherspoon v. Haft, 157 Ohio St., 474, 106 N. E. (2d), 296, wherein the principle was also recognized and applied, and Thrash v. D-Drive-It Co., supra.
Now, let us turn to the instant case. In its “service contract” with the restaurant, defendant agreed to furnish “Warner service” on the elevator herein involved, consisting of “weekly examination of the elevator * * * including oiling and cleaning * * * and making necessary minor adjustments at the time of regular examination.” Excluded from coverage under the contract are the cost of any labor expended, materials used in making repairs or alterations to any part of the elevator *39 equipment or enclosures, and the furnishing of any cables. The contract provides that the defendant assumed no liability on account of accidents except those directly due to its negligent acts or omissions or to those of its employees.
Although a purpose of the letter written by the defendant to the restaurant on April 6, 1953, was to induce the signing of the contract, it contains also language representing defendant’s practical interpretation of the contract and the obligations it. assumed thereunder. For example, the letter recites that the service covered by this contract embraces “a weekly examination of the entire elevator,” and “on completion of each examination a brief but comprehensive report is left outlining the general condition of the elevator and calling to your attention anything you should know concerning its condition and/or operation.” And the fact is that defendant did examine the elevator and made inspection reports regularly in accordance with its letter.
Thus, the contract as interpreted and executed by the defendant covers the servicing and examination of the elevator end, in connection therewith, the preparation and submission of a written report as to its condition, with a notation of needed repairs or replacements.
Certainly the safety device to prevent the elevator from falling in the event of mechanical failure or for any other reason is an important part of the elevator’s structure, and nothing appears from the evidence herein to.except such device from the examination which the defendant agreed to and was paid to make.
As has already been pointed out, the supervisor of elevator inspection for the city of Cincinnati, who examined the elevator shortly after it fell, testified that the “jaws” of the safety device were so badly worn as to be wholly ineffective to meet their intended purpose of keeping the elevator from falling.
In a situation of the kind described, the proper test to be applied is whether there is sufficient evidence before the court and jury at the close of plaintiff’s case in chief to support a finding that defendant was negligent in failing to perform the duty, it assumed, to examine the elevator and report on its condition, and that such negligence was a proximate cause *40 of plaintiff’s injuries. We think plaintiff met that test. Therefore, the trial court committed prejudicial error in directing the verdict and entering judgment for the defendant, and the Court of Appeals likewise erred in approving such action.
The judgment of the Court of Appeals is reversed, and the cause remanded to the Court of Common Pleas for further proceedings.

Judgment reversed.

Matthias, Hart and Taft, JJ., concur.
Bell, J., dissents.